UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DONOVAN ANDERSON,

                    Plaintiff,

           - against -

DAVIS POLK & WARDWELL LLP, LAWRENCE
JACOBS, individually and as Managing Attorney,
JENNIFER CANDELARIO, individually, and as
Assistant Managing Attorney, LAMINA VUCETOVIC,
individually and as Managing Clerk, ROBERT JONES,
DUANE GRANT, EMMANUEL FASHAKIN, and 1-
100 unknown employees of DPW, in both their
individual and official capacities,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10 Civ. 9338 (NRB) (DF)

 

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT OR,
ALTERNATIVELY, TO DISMISS THE COMPLAINT
BASED ON PLAINTIFF'S SPOLIATION OF EVIDENCE**

Of Counsel:

    Barry Asen
    Lauren A. Malanga
    Anna Kolontyrsky

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................. iii

PRELIMINARY STATEMENT ......................................................................... 1

PROCEDURAL BACKGROUND........................................................................ 2

STATEMENT OF FACTS ................................................................................. 4

    A. Mr. Anderson's Employment.............................................................. 4

    B. Mr. Anderson's Allegations Concerning Robert Jones ......................... 5

    C. Mr. Anderson's Allegations Concerning Duane Grant.......................... 8

    D. Mr. Anderson's Allegations Concerning
       Jennifer Candelario and Lawrence Jacobs..................................... 9

    E. Mr. Anderson's Alleged Internal Complaint
       to Ms. Candelario about Same-Sex Harassment........................... 11

    F. Mr. Anderson Secretly Tape-Recorded Conversations with
       Ms. Candelario, Mr. Grant and Others, and has Failed
       to Produce the Tape-Recordings as Ordered by the Court. ......... 12

    G. Mr. Anderson has No Damages .......................................................... 13

SUMMARY JUDGMENT STANDARDS ............................................................ 13

ARGUMENT

POINT I

    SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS ON MR.
    ANDERSON'S SAME-SEX HARASSMENT CLAIM BECAUSE HE CANNOT
    ESTABLISH THAT HIS WORKPLACE ENVIRONMENT WAS SEXUALLY
    HOSTILE. ........................................................................................... 14

    A. Legal Standards Applicable to Mr. Anderson's Sexual Harassment Claim .............. 14

    B. Mr. Anderson's Deposition Testimony Demonstrates
       that Summary Judgment is Appropriate ...................................... 16

i

POINT II

    ALTERNATIVELY, MR. ANDERSON'S SAME-SEX SEXUAL
HARASSMENT CLAIM SHOULD BE DISMISSED BECAUSE HE
HAS ENGAGED IN THE INEXCUSABLE SPOLIATION OF KEY
EVIDENCE, WHICH HAS UNFAIRLY PREJUDICED DEFENDANTS........................ 18

    A.   Mr. Anderson's Spoliation Unfairly Prejudices Defendants ...................................... 19

    B.   Mr. Anderson's Spoliation Requires Dismissal of his Remaining Claim .................. 20

CONCLUSION .............................................................................................................................. 22

# TABLE OF AUTHORITIES

Page

A. CASES

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456 (2d Cir. 2001) ..............................14

*Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392 (S.D.N.Y. 2012) ...........2, 14, 15, 17, 22

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................13, 18

*Barsoum v. NYC Housing Auth.*, 202 F.R.D. 396 (S.D.N.Y. 2001) ....................................20, 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................13

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) ...............................................15, 16

*Hartley v. Rubio*, 785 F. Supp. 2d 165 (S.D.N.Y. 2011) ..............................................13

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986) .............................................14

*Krist v. Kolombos Rest., Inc.*, 688 F.3d 89 (2d Cir. 2012) ..........................................15

*Kronish v. United States*, 150 F.3d 112 (2d Cir. 1998) ..............................................21

*LaPorte v. Greenwich House*, 2010 WL 1779342 (S.D.N.Y. Apr. 26, 2010) ........................14, 18

*Manko v. Deutsche Bank*, 554 F. Supp. 2d 467 (S.D.N.Y. 2008) ................................14, 16

*McMunn v. Memorial Sloan-Kettering Cancer Center*,
   191 F. Supp. 2d 440 (S.D.N.Y. 2002) ...........................................................21, 22

*McRedmond v. Sutton Place Restaurant & Bar*, 95 A.D.3d 671 (1st Dep't 2012) ................15, 16

*Miller v. Time-Warner Communications, Inc.*,
   1999 WL 739528 (S.D.N.Y. Sept. 22, 1999) .........................................................21

*Oncale v. Sundower Offshore Services, Inc.*, 523 U.S. 75 (1998) ....................................14

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) ...........................................15, 16, 17, 18

*Pension Committee of Univ. of Montreal Pension Plan v.
   Banc of America Securities, LLC*, 685 F. Supp. 2d 456 (S.D.N.Y. 2010)..........................21

*Pucino v Verizon Wireless Communications, Inc.*, 618 F.3d 112 (2d Cir. 2010) .....................14

*Waters v. General Board of Global Ministries*, 769 F. Supp. 2d 545 (S.D.N.Y. 2011)..........14, 18

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 (2d Cir. 1999)................................19, 20, 21

*Williams v. New York City Housing Authority*, 61 A.D.3d 62 (1ˢᵗ Dep't 2009) ...............15, 16, 18

## STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 37.........................................................................................................................20

Fed. R. Civ. P. 56(a) ...................................................................................................................13

New York City Human Rights Law, N.Y.C. Adm. Code § 8-107 *et seq.* ............................. *passim*

New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*. .................................. *passim*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*.................................... *passim*

## PRELIMINARY STATEMENT

The only remaining claim in this lawsuit concerns Plaintiff *Pro Se* Donovan Anderson's assertion that on four occasions in a six-year period, two male co-workers, Defendants Robert Jones and Duane Grant, sexually harassed him and that Defendants Jennifer Candelario and Davis Polk & Wardwell LLP (DPW) ignored his one alleged complaint about it. Mr. Anderson's claim should be dismissed for two independent reasons.

First, Mr. Anderson testified that the four instances of sexual harassment he allegedly experienced in those six years were so trivial and brief that they caused him no more consternation than a "fly [that] spotted you for a moment and you swat it away and it's gone." (Anderson Dep. at 84, 87, 103, 46)[1] Accordingly, there is no actionable sexual harassment claim under any applicable law even if one assumes that the events described in his deposition testimony occurred.

Second, Mr. Anderson's remaining claim should be dismissed because he has spoliated key evidence. Mr. Anderson testified that he secretly tape-recorded his only alleged complaint concerning sexual harassment to Ms. Candelario who supposedly refused to consider it. (Anderson Dep. at 189-91) Mr. Anderson also secretly recorded other employees at DPW, including Mr. Grant. (*Id.* at 193-94) According to Mr. Anderson, he made his secret recordings "because of everything that was happening to me at the firm. People saying things. People lying." (*Id.* at 187)

---

[1] All of the material facts supporting Defendants' summary judgment motion are contained in Donovan Anderson's relevant deposition testimony ("Anderson Dep. at ___"). We have annexed the excerpts cited in this brief as Exhibit G to the accompanying declaration of Defendants' co-counsel Barry Asen ("Asen Decl."). If the Court wishes to review Mr. Anderson's entire deposition transcript, Defendants will promptly provide it.

1

This Court ordered Mr. Anderson to produce his tape-recordings by October 11, 2012, but he has not done so. He claims he may have "misplaced" the recordings "in the garbage," but one "might pop up though when you least expect it." (Anderson Dep. at 184-85, 189-91) He also claims that he provided copies of the recordings to newspapers and several media personalities, all of whom deny knowledge or possession of the tapes. (Asen Decl. at Ex. J) Mr. Anderson's failure to preserve or produce these recordings suggests that they contradict his claims and confirm that the Defendants' denials are true. The absence of Mr. Anderson's secret tapes thus unfairly prejudices Defendants.

This spoliation is not Mr. Anderson's first transgression in this lawsuit. This Court has warned him about misusing this lawsuit to harass his co-workers and others. *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 415-18 & n.11 (S.D.N.Y. 2012) (striking scandalous and irrelevant allegations, quashing subpoenas for medical records concerning sexually transmitted diseases, denying leave to amend the complaint to add allegations that employees of other law firms and the federal court are gay, and putting "plaintiff squarely on notice [that] the Court trusts he will conduct himself properly in this case going forward"). This Court should sanction Mr. Anderson by, among other things, dismissing his remaining harassment claim based on his destruction of evidence.

## PROCEDURAL BACKGROUND

On December 15, 2010, Mr. Anderson filed a complaint in this Court against Defendants DPW, Lawrence Jacobs (DPW's Managing Attorney), Jennifer Candelario and Lamina Vucetovic (Mr. Anderson's former supervisors), Emmanuel Fashakin, Robert Jones and Duane Grant (his former co-workers), and 1-100 other unknown DPW employees. On April 13, 2011, he filed a first amended complaint ("complaint") against the same defendants alleging: (1) sexual

harassment by male co-workers, (2) sexual harassment by female co-workers (3) gender discrimination in connection with the terms of his employment, (4) age discrimination in connection with the termination of his employment, (5) failure to compensate in connection with overtime and expenses, (6) sexual orientation discrimination, (7) retaliation in connection with an internal complaint, (8) failure to promote, and (9) race discrimination. [2]

On March 6, 2012, this Court granted Defendants' motion to dismiss eight of Mr. Anderson's nine claims as a matter of law, which left Mr. Anderson's same-sex sexual harassment claim against Defendants Jones, Grant, Candelario and DPW as his sole remaining claim. (The Court's Memorandum and Order is attached to the Asen Declaration as Exhibit E.) For this remaining claim, Mr. Anderson alleges that Mr. Jones and Mr. Grant sexually harassed him at the direction of Ms. Candelario and Mr. Jacobs (who is no longer a defendant), and that DPW did not take appropriate measures to stop it. Mr. Anderson brings this claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Adm. Code § 8-107 *et seq*. ("NYCHRL").

On March 22, 2012, Defendants filed their answer to Mr. Anderson's complaint. (Asen Decl. at Ex. F) Discovery then commenced, and the parties exchanged and responded to each other's interrogatories and document requests. On September 10, 2012, Defendants conducted Mr. Anderson's deposition. Mr. Anderson did not conduct any depositions. (Asen Decl. at ¶ 5)

---

[2] For the Court's convenience, the first amended complaint (without its numerous exhibits) is attached as Exhibit A to the Asen Declaration. Before filing this action, Mr. Anderson filed a discrimination charge against DPW with the U.S. Equal Employment Opportunity Commission ("EEOC"). His EEOC charge, dated April 22, 2010, and his supplemental EEOC charge, dated September 1, 2010, are attached as Exhibits B and C, respectively, to the Asen Declaration. The EEOC found no cause to believe that discrimination occurred, and its "Dismissal and Notice of Rights," dated September 14, 2010, is attached as Exhibit D to the Asen Declaration.

Defendants now move for summary judgment on Mr. Anderson's remaining harassment claim, which his deposition testimony demonstrates is frivolous. Mr. Anderson has not come forward with a shred of evidence to support his harassment claim, offering instead only wild speculation and irrational conclusions. Mr. Anderson's own deposition testimony demonstrates that he did not suffer any actionable harassment.

The record not only shows that Mr. Anderson was *not* a victim, but that Mr. Anderson is misusing his remaining claim to harass Messrs. Jones and Grant. In Mr. Anderson's view, suggesting that someone is gay is an insult because "if you're a homosexual and do homosexual acts, you're no longer a male." (Anderson Dep. at 146) Mr. Anderson's belief is offensive and wrong. The real insult here is his false accusation that his former co-workers are sexual predators. Mr. Anderson's federal complaint has circulated throughout the New York City court clerk community -- as Mr. Anderson knew it would. As a result, Mr. Jones's and Mr. Grant's friends and acquaintances have peppered them with questions about their personal lives and Mr. Anderson's baseless claims. (*See* Jones Decl. ¶ 9; Grant Decl. ¶ 5)[3] Defendants respectfully request that this Court end Mr. Anderson's misconduct by ending this lawsuit.

## STATEMENT OF FACTS

### A. Mr. Anderson's Employment

In 1993, DPW hired Mr. Anderson as a court clerk. (Anderson Dep. at 6, 8) In that capacity, he copied documents, served and filed papers, and retrieved files from the courts. (*Id.* at 8) Mr. Anderson worked with fellow court clerks Robert Jones and Duane Grant in DPW's Managing Attorney's Office. (*Id.* at 66) At relevant times, Lawrence Jacobs was DPW's Managing Attorney, while Jennifer Candelario was DPW's Assistant Managing Attorney and

---

[3] The declarations of Robert Jones, Duane Grant, Jennifer Candelario and Lawrence Jacobs accompany this motion.

supervised Mr. Anderson.  (Complaint, caption; Anderson Dep. at 59)  Mr. Anderson remained

as a court clerk until October 4, 2009, when his DPW employment was terminated.  (*Id.* at 20)

**B.    Mr. Anderson's Allegations Concerning Robert Jones**

    1.  <u>Mr. Anderson allegedly believes that Mr. Jones is bisexual.</u>

    Mr. Anderson alleges that Mr. Jones is bisexual.  (Anderson Dep. at 36-37)  Mr. Jones

attests that he is neither bisexual nor gay.  (Jones Decl. at ¶ 3)  Mr. Anderson refers to Mr. Jones

as a "down low."  (Anderson Dep. at 112)  Mr. Anderson defined a "down low" as follows:

> It's a phenomenon in the Black community where men who are
> married or have girlfriends, they have sexual relationships with
> other men and they will bring home diseases to their wives.  They
> call themselves down lows.  They're on the down low.  It's like a
> secret. [*Id.* at 111]

    Neither Mr. Jones nor anyone else told Mr. Anderson that Mr. Jones is gay, bisexual or a

"down low."  (Anderson Dep. at 36-37, 112)  Nonetheless, Mr. Anderson believes that Mr. Jones

is bisexual because Mr. Jones <u>allegedly</u>: (1) once went to a gay club in New York, (2) stayed in

hotel rooms with male friends during vacations in Puerto Rico and Jamaica, and (3) made two

sexual advances towards him on DPW's premises.  (*Id.* at 37, 48, 156-57)  He also believes that

Mr. Jones and Mr. Grant have had sexual relations together because he "assume[s] that birds of a

feather would flock together."  (*Id.* at 44, 179)

    In 2004, Mr. Jones allegedly told Mr. Anderson that he went to a gay club in New York

with two women, but that he was not having sexual relations with either.  (Anderson Dep. at 161-

62)  Based on this alleged statement, Mr. Anderson concluded that Mr. Jones is gay because

"usually homosexuals go to homosexual clubs."  (*Id.* at 162)  Mr. Anderson further testified that

although Mr. Jones stated that he was not gay during their conversation, Mr. Anderson did not

believe Mr. Jones. (*Id.* at 162-63) Mr. Anderson later contradicted himself and testified that Mr. Jones never said that he was not gay. (*Id.* at 164)[4]

Mr. Anderson also alleges that Mr. Jones told him in 2004 that when he went on vacation to Puerto Rico, he stayed in a hotel room with a male co-worker (not Mr. Grant). (Anderson Dep. at 170) When asked if he knew whether the co-worker was gay, Mr. Anderson testified that he did not know. (*Id.* at 170-71) When asked if he knew whether Mr. Jones and the co-worker had sexual relations in Puerto Rico, Mr. Anderson replied, "I was not in the room." (*Id.* at 171)

As to Mr. Jones's vacation in Jamaica, Mr. Anderson stated that Mr. Jones went there with "[s]ome dude in the Bronx," whose name he does not know. (Anderson Dep. at 166-68) Mr. Anderson assumes that the "dude" was gay, but he does not know that for a fact either. (*Id.* at 167) When asked if the "dude" could simply have been Mr. Jones's friend, he responded:

> I would assume that it is his friend if you're getting on a plane with someone and sleeping in the room with him. I'm assuming that they're your friend. Just because you're both in the room, we could assume that they had sex; but if you're not in the room to see them having sex, you can't say specifically that, yes, they had sex. You could assume. [*Id.* at 167][5]

2. Alleged sexual harassment by Mr. Jones

Mr. Anderson and Mr. Jones worked together at DPW from 1993 to 2009. (Anderson Dep. at 82-83, 114) Mr. Jones's first so-called advance occurred in 2004. (*Id.* at 96-98) Mr.

---

[4] In his complaint, Mr. Anderson alleged that Mr. Jones told him that he went to "homosexual clubs." At his deposition, he testified that Mr. Jones told him that he *once* went to a gay club. (*Compare* Complaint, Section II, second unnumbered paragraph on unnumbered page 2 (attached to Asen Decl. as Ex. A) *with* Anderson Dep. at 161-62)

[5] Mr. Anderson told clerks at the courthouse that Mr. Jones stayed with a man in hotel rooms in Puerto Rico and Jamaica, and that he went to a gay club with women who "maybe … were trying to help him with the situation." (Anderson Dep. at 171-72) Mr. Anderson further testified: "I told them about the situation. You can draw your own assumption. You can juxtapose and then come up with some kind of conclusion or something. I wasn't saying that, you know, Bob [Jones] is gay. I could have. I could have said that." (*Id.* at 172-73)

Anderson and Mr. Jones were allegedly standing next to each other in a DPW men's room in front of two urinals that did not have a partition between them. (*Id.* at 96-98, 108) Mr. Anderson was looking straight ahead, but – with his peripheral vision – he allegedly saw Mr. Jones looking at his (Mr. Anderson's) penis. (*Id.* at 96-98) Mr. Jones allegedly looked for a "split second." (*Id.* at 103) Mr. Anderson did not attempt to block Mr. Jones's view; Mr. Anderson simply finished and left the men's room. (*Id.* at 105-06)

Mr. Anderson did not tell Mr. Jones to stop looking or not to look again in the future. (Anderson Dep. at 106) He testified that Mr. Jones "can do whatever he wants. What I'm not okay with is if I encouraged him, which I did not." (*Id.* at 106) Mr. Anderson ignored the alleged incident and went back to work. (*Id.* at 107-08)[6]

Mr. Anderson stated that it was important to him to have privacy in the men's room, and so he subsequently used a toilet stall, instead of a urinal, if someone was in the men's room when he entered. (Anderson Dep. at 101-02, 108) Similarly, when he had belonged to a Jack LaLanne health club, Mr. Anderson left on his underwear in the shower room. (*Id.* at 101-02) He wore his underwear while showering because: "I don't want to invite ... advances." (*Id.* at 102)

The second alleged sexual advance, which Mr. Anderson referred to as "peek-a-boo," occurred in 2009. (Anderson Dep. at 113-15) While sitting in his cubicle, Mr. Anderson allegedly told Mr. Jones about his recent trip to the Bronx to serve papers. (*Id.* at 115-17) Mr. Anderson related that while he was on a bus, two young women – who were in their late teens or early 20s and were sitting on the back seat of the bus – spread their legs open. (*Id.* at 118-21) As Mr. Anderson told his story, Mr. Jones who also was sitting with his legs open, allegedly

---

[6] In his complaint, Mr. Anderson alleged that Mr. Jones looked at his penis on "a few occasions." (Complaint, Section II, fourth unnumbered paragraph on unnumbered page 2) At his deposition, Mr. Anderson testified that Mr. Jones looked *once*. (Anderson Dep. at 108)

"flapped his hands" between his legs, and said, "Look here," which Mr. Anderson did. (*Id.* at 113-14, 121-23) Mr. Jones then allegedly stated that he had to go to the men's room and left. (*Id.* at 123-24) He did not ask Mr. Anderson to accompany him. (*Id.* at 124-25) After Mr. Jones left, Mr. Anderson "went about [his] business" at DPW. (*Id.* at 127)[7]

Mr. Jones's alleged sexual advances did not interfere with Mr. Anderson's ability to do his work at DPW. (Anderson Dep. at 87) Mr. Anderson never told Mr. Jones to stop making advances or that his alleged advances upset him. (*Id.* at 84-85) As Mr. Anderson explained, "It's like a fly spotted you for a moment and you swat it away and it's gone." (*Id.* at 87)[8]

## C.    Mr. Anderson's Allegations Concerning Duane Grant

### 1.    Mr. Anderson allegedly believes that Mr. Grant is bisexual.

Mr. Anderson contends that Mr. Grant is bisexual because Mr. Grant allegedly looked at his (Mr. Anderson's) crotch, sexually harassed him, and "hangs out" with Mr. Jones. (Anderson Dep. at 44-45, 136-44, 147-51) Neither Mr. Grant nor anyone else told Mr. Anderson that Mr. Grant is bisexual or gay. (*Id.* at 50, 112) Mr. Grant attests that he is neither bisexual nor gay. (Grant Decl. at ¶ 3)

### 2.    Alleged sexual harassment by Mr. Grant

Mr. Anderson and Mr. Grant worked together at DPW from 2004 to 2009. (Anderson Dep. at 153; *see* Grant Decl. at ¶ 2) The first alleged act of sexual harassment occurred in 2008 or 2009 in Mr. Grant's cubicle. (Anderson Dep. at 136-37) According to Mr. Anderson, during

---

[7] In his complaint, Mr. Anderson alleged that Mr. Jones would play "peek-a-boo" with him "in the first and second quarter of 2009." (Complaint, Section II, third unnumbered paragraph on unnumbered page 2) At his deposition, he testified that it happened *once*. (Anderson Dep. at 113-14)

[8] Although not material for purposes of this motion, Mr. Jones attests that he did not go to a gay club with two women, but went to clubs (not gay clubs) with women several times in the 1980s. He went on vacation in 1991 to Puerto Rico with a close friend and went on vacation in 2001 to Jamaica with his best friend and his daughter's godfather. Neither friend is gay or bisexual. Mr. Jones also denies that the alleged men's room and the "peek-a-boo" incidents occurred. (Jones Decl. at ¶¶ 4-7)

a work-related conversation, Mr. Grant looked at Mr. Anderson's crotch and stated that he would want Mr. Anderson to be comfortable if he visited his (Mr. Grant's) home and sat on his bed. (*Id.* at 136-37, 139) In response, Mr. Anderson allegedly asked Mr. Grant why he wanted to involve him in his "battyman" business (which Mr. Anderson testified was Jamaican slang for gay). (*Id.* at 45, 143) Mr. Grant allegedly did not respond, and they resumed talking about work. (*Id.* at 144) Mr. Anderson also qualified his testimony by stating that Mr. Grant did not actually invite him to his home, and Mr. Grant "never mentioned sex at any time." (*Id.* at 141-43) Mr. Anderson "didn't get upset" by Mr. Grant's statement because "like I said, it's like a fly. You try to ignore things…." (*Id.* at 146)

The other alleged advance occurred in 2009. (Anderson Dep. at 153) While Mr. Anderson was sitting in his cubicle, Mr. Grant allegedly kneeled down and put his right hand on Mr. Anderson's left thigh. (*Id.* at 147) Mr. Grant allegedly kept his hand there for more than two seconds. (*Id.* at 148-50) Mr. Anderson did not attempt to push Mr. Grant's hand away or tell him to remove it because "I'm comfortable with myself." (*Id.* at 150-51) After Mr. Grant removed his hand, their conversation, which "had nothing to do with sex," ended "cordially." (*Id.* at 151-52) Mr. Anderson did not tell Mr. Grant not to do it again. (*Id.* at 153-54)[9]

**D.    Mr. Anderson's Allegations Concerning Jennifer Candelario and Lawrence Jacobs**

In 2006, Mr. Anderson complained to DPW's Human Resources Department that Ms. Candelario was discriminating against him in terms of his job assignments. (Anderson Dep. at

---

[9] In his complaint, Mr. Anderson alleged that Mr. Grant put his hand on his leg; at his deposition, he testified that Mr. Grant put his hand on his thigh. (*Compare* Complaint, Section II, last unnumbered paragraph on unnumbered page 3 *with* Anderson Dep. at 147-54) Moreover, at the top of unnumbered page 4 of his supplemental EEOC charge (*see* Asen Decl. at Ex. C), Mr. Anderson stated that Mr. Grant "would also kneel when at my cube with his right hand on my left leg," implying that this incident occurred *more than once*. When deposed, though, Mr. Anderson testified that it was *a one-time event.* (Anderson Dep. at 147-55) Although not material for purposes of this motion, Mr. Grant denies that the "visiting his home" incident and the "leg/thigh" incident occurred. (Grant Decl. at ¶ 4)

68-70, 73) He also complained to Mr. Jacobs about Ms. Candelario's treatment of him. (*Id.* at 61) Mr. Anderson does not know why Ms. Candelario allegedly discriminated against him, but suspects that it might have been a "Napoleon complex" because he is a "tall, big Black guy" and she is smaller. (*Id.* at 53-54) In any case, when Mr. Anderson passed by the desk of Mr. Jacobs's secretary, she allegedly "blurted out" the word "ringleader," which he interpreted as a warning that Mr. Jacobs was the ringleader of the 2006 discrimination campaign against him. (*Id.* at 73, 211-13) The secretary, however, never actually said that Mr. Jacobs was the so-called ringleader and Mr. Anderson never had any conversation with her. (*Id.* at 213)[10]

The Human Resources Department advised Mr. Anderson in 2006 that it found no evidence of discrimination. (Anderson Dep. at 69-70) Afterwards, Mr. Anderson claims that Mr. Jacobs and Ms. Candelario continued to plot against him. (*Id.* at 81-82) He explained that he had thought that his relationship with Mr. Jacobs was "okay," but then "Mr. Jacobs decided that he had to take sides in the struggle with me and Ms. Candelario." (*Id.* at 59) He believes that Mr. Jacobs continued to be the ringleader against him in 2009 because "[i]f we knew that he was the ringleader in 2006, so why do you think he's not the ringleader in 2009." (*Id.* at 73)

Mr. Anderson further believes that Mr. Jacobs might have instructed Ms. Candelario how to "harass, terrorize, [and] dehumanize Donovan Anderson." (Anderson Dep. at 198) Mr. Anderson does not allege, however, that Ms. Candelario specifically told either Mr. Jones or Mr. Grant to sexually harass him. (*Id.* at 200)[11]

---

[10] In contrast, in his EEOC charge, Mr. Anderson alleged that Mr. Jacobs's "Administrative Assistant *told me* that Lawrence Jacobs was the 'ring leader.'" (*See* Asen Decl. at Ex. B, next to last paragraph on unnumbered page 2) (emphasis added)

[11] Although not material for summary judgment purposes, Mr. Jacobs and Ms. Candelario attest that they did not instruct anyone to sexually harass Mr. Anderson. (Jacobs Decl. at ¶ 2; Candelario Decl. at ¶ 4)

At his deposition, Mr. Anderson discussed his reasons for filing this lawsuit against Mr. Jacobs and Ms. Candelario, both of whom attended. He pointed at them and testified:

> ... I'm not going to bow down to you (indicating). I told them several times and today I'm saying it again. I never bowed down to you, and I never bowed down to you (indicating). I'm pointing at Ms. Candelario and Mr. Jacobs. [Anderson Dep. at 146]

**E.     Mr. Anderson's Alleged Internal Complaint to Ms. Candelario about Same-Sex Harassment**

DPW maintains a non-discrimination policy and complaint procedure, which may be utilized by employees who believe that they have been discriminated against or harassed. (Candelario Decl. at ¶ 3 and Ex. A) Pursuant to the complaint procedure, employees may complain to their supervisor, DPW's Director of Human Resources or other senior-level attorneys and executives. (*Id.*)

In 2009, possibly one to four weeks after the alleged "peek-a-boo" incident, Mr. Anderson allegedly went to Ms. Candelario's office. (Anderson Dep. at 130) He does not recall if he asked to meet with her or if she asked to meet with him to discuss a work-related issue. (*Id.* at 75-76) He also does not recall any specifics that he raised with Ms. Candelario about the alleged harassment because Ms. Candelario allegedly "stopped me dead in my tracks [and stated] 'I do not want to hear anything about any homosexuals.'" (*Id.* at 77) Their conversation about the alleged harassment lasted less than five to 10 seconds. (*Id.*)

In contrast, Ms. Candelario attests that this alleged conversation never occurred and that Mr. Anderson never complained to her about sexual harassment by either Mr. Jones or Mr. Grant. (Candelario Decl. at ¶ 3)

Mr. Anderson allegedly spoke with Ms. Candelario about the sexual harassment because he wanted to "put it on the record." (Anderson Dep. at 130-31) It "never crossed [his] mind" to ask that Mr. Jones or Mr. Grant be fired. (*Id.* at 131) Mr. Anderson does not even recall if he

mentioned Mr. Grant during the conversation. (*Id.* at 76) Afterwards, Mr. Anderson decided not to complain to the Human Resources Department or to Mr. Jacobs about the alleged harassment by Mr. Jones and Mr. Grant because he thought that it would not do any good. (*Id.* at 132-35)

**F.**     **Mr. Anderson Secretly Tape-Recorded Conversations with Ms. Candelario, Mr. Grant and Others, and has Failed to Produce the Tape-Recordings as Ordered by the Court.**

Although Mr. Anderson initially testified that "I have no tape recordings," he then testified that he secretly tape-recorded conversations with Mr. Grant, Ms. Candelario, Mr. Jacobs, and Kathleen Commins, DPW's Director of Human Resources, in 2009. (Anderson Dep. at 183-86, 193-94) As to Ms. Candelario, he stated that the tape-recording shows that he complained to her about sexual harassment. (*Id.* at 189) As to Mr. Grant, he stated that he could not recall whether the tape-recording shows that Mr. Grant sexually harassed him. (*Id.* at 193-94) When asked if he would produce his tape-recordings, Mr. Anderson stated that he would produce them if he could find them, but it was possible that he had "misplaced" them in the "garbage." (*Id.* at 184-85, 189-90)

Four days after his deposition, Mr. Anderson forwarded a letter, dated September 13, 2012, to Defendants' counsel, stating:

> The tapes as told to me are now in position [possession] of an Entity that has been given rights to them.
>
> I will not use them for the purpose of this litigation but reserve the right to use them for contempt, lying to the Court, perjury and any other hearing to be had by any Governmental Agency or otherwise. [Asen Decl. at Ex. H]

On September 27, 2012, this Court ordered Mr. Anderson to produce all tape-recordings of conversations that he had with his DPW superiors and co-workers. (Asen Decl. at Ex. I) On October 11, 2012, Mr. Anderson advised Defendants' counsel that he could not find the tape-recordings and could not obtain them from the newspapers (New York Times, Daily News, New

York Post) and the media figures (Nancy Grace, Geraldo Rivera and others) who had them. (Asen Decl. at Ex. J)

**G.    Mr. Anderson has No Damages**

Mr. Anderson did not seek professional help for any emotional upset caused by the alleged harassment. (Anderson Dep. at 203-06)  Instead, he chose a different avenue, explaining:

> Sometimes you have to like sue people to let people know that I'm not a homosexual.  I'm not going to condone anything you did to me and you trying to turn me into one is very offensive.

> Maybe that's the way some people can only deal with people especially if they're afraid of you because now if you're a homosexual and do homosexual acts, you're no longer a male, you bow down, you bent over. [*Id.* at 146]

As next shown, the application of the following legal standards to Mr. Anderson's own version of the facts according to his deposition testimony demonstrates that Defendants are entitled to summary judgment as a matter of law or, in the alternative, that the complaint should be dismissed based upon Mr. Anderson's spoliation of key evidence, which has unfairly prejudiced Defendants.

## SUMMARY JUDGMENT STANDARDS

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hartley v. Rubio*, 785 F. Supp. 2d 165, 175-76 (S.D.N.Y. 2011) (Buchwald, J.) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986)).

The non-moving party may not overcome a motion for summary judgment by relying "on mere speculation or conjecture as to the true nature of the facts." *LaPorte v. Greenwich House*, 2010 WL 1779342, at *3 (S.D.N.Y. Apr. 26, 2010) (Buchwald, J.) (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). Similarly, the non-moving party "must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Waters v. General Board of Global Ministries*, 769 F. Supp. 2d 545, 552 (S.D.N.Y. 2011) (Buchwald, J.) (citation omitted); *see Manko v. Deutsche Bank*, 554 F. Supp. 2d 467, 476 (S.D.N.Y. 2008) (Buchwald, J.).

These summary judgment principles apply with equal force in all employment discrimination cases. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001); *Waters*, 769 F. Supp. 2d at 553.

## ARGUMENT

### POINT I

**SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS ON MR. ANDERSON'S SAME-SEX HARASSMENT CLAIM BECAUSE HE CANNOT ESTABLISH THAT HIS WORKPLACE ENVIRONMENT WAS SEXUALLY HOSTILE.**

A. **Legal Standards Applicable to Mr. Anderson's Sexual Harassment Claim**

Hostile work environment claims, which are premised on sexual harassment and filed under Title VII and the NYSHRL, are subject to the same legal analysis. *Pucino v Verizon Wireless Communications, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010); *Anderson*, 850 F. Supp. 2d at 404. Neither statute operates as a "general civility code." *Oncale v. Sundower Offshore Services, Inc.*, 523 U.S. 75, 80-81 (1998); *Anderson*, 850 F. Supp. 2d at 404. Rather, to prevail on a sexually hostile work environment claim under Title VII and the NYSHRL, the plaintiff must establish that the complained of conduct:

> (1) "is objectively severe and pervasive – that is, ... creates an
> environment that a reasonable person would find hostile or
> abusive;" (2) creates an environment that "the plaintiff subjectively
> perceives as hostile and abusive;" and (3) "creates such an
> environment because of plaintiff's sex."

*Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007) (citation omitted); *see Anderson,* 850 F. Supp. 2d at 404. The plaintiff possesses the burden of establishing that the complained of conduct occurred because of his sex. *Patane,* 508 F.3d at 113; *Anderson,* 850 F. Supp. 2d at 404.

The NYCHRL provides somewhat broader rights than the federal and state anti-discrimination statutes and should be "given an independent liberal construction." *Krist v. Kolombos Rest., Inc.,* 688 F.3d 89, 97 (2d Cir. 2012). Under the NYCHRL, as with Title VII and the NYSHRL, the alleged hostile environment must have occurred because of the plaintiff's sex. *Williams v. New York City Housing Authority,* 61 A.D.3d 62, 75-80 (1st Dep't 2009). Unlike Title VII and the NYSHRL, however, under the NYCHRL, a plaintiff is not required to establish that the sexual harassment was either "severe" or "pervasive," but only that the harassment amounted to more than "petty slights and trivial inconveniences." *Id.* at 75-80; *Anderson,* 850 F. Supp. 2d at 404.

Whether the plaintiff has satisfied this lesser NYCHRL standard "is measured by the totality of the circumstances, of which no single one is determinative." *McRedmond v. Sutton Place Restaurant & Bar,* 95 A.D.3d 671, 672 (1st Dep't 2012) (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23 (1993)). In assessing the "totality of the circumstances," courts may consider:

> (1) the frequency of the discriminatory conduct; (2) its
> severity; (3) whether it is threatening and humiliating, or a
> mere offensive utterance; and (4) "whether it unreasonably
> interferes with an employee's work performance."

*Patane,* 508 F.3d at 113 (quoting *Harris,* 510 U.S. at 23).

Although the NYCHRL should be liberally construed, the NYCHRL – like Title VII and the NYSHRL – does not operate as a "general civility code." *Williams*, 61 A.D.3d at 79. There will be no liability if the alleged harassment consists of nothing more than what a reasonable person would consider to be "petty slights and trivial inconveniences." *Id.* at 79-80.

**B.    Mr. Anderson's Deposition Testimony Demonstrates that Summary Judgment is Appropriate.**

Mr. Anderson has not proffered any evidence to support his sexual harassment claim. First, under all three statutes, to determine whether a hostile environment exists, "the frequency of the discriminatory conduct" must be considered. *Patane*, 508 F.3d at 133 (quoting *Harris*, 510 U.S. at 23); *McRedmond*, 95 A.D.3d at 673 ("hostile work environment is measured by the totality of the circumstances"). Mr. Anderson complains of four alleged incidents from 2004 to 2009, a six-year period (Anderson Dep. at 96, 113-14, 136-37, 152-53, 203), which are far too few and infrequent in number to render his workplace sexually hostile. *See Manko*, 554 F. Supp. 2d at 481 ("a reasonable juror could not conclude that these [several] interactions, which occurred over an eighteen-month period, were sufficient ... [to] create an abusive working environment").

Second, Mr. Anderson did not "subjectively" perceive that Mr. Jones and Mr. Grant created a hostile environment for him. *See Patane,* 508 F.3d at 113. As to Mr. Jones's alleged harassment, Mr. Anderson testified, "It's like a fly spotted you for a moment and you swat it away and it's gone." (Anderson Dep. at 87) As to Mr. Grant, he stated, "[L]ike I said, it's like a fly. You try to ignore things...." (*Id.* at 146)

Third, Mr. Anderson's assertions do not rise beyond the level of "petty slights and trivial inconveniences," let alone "severe or pervasive" harassment. *See Williams,* 61 A.D.3d at 79-80; *Patane,* 508 F.3d at 113. As to Mr. Jones, Mr. Anderson alleges that: Mr. Jones looked at his

penis for a "split second" in a DPW men's room; there was no discussion between them; and he (Mr. Anderson) then left the men's room. (Anderson Dep. at 96-98, 103, 105-06) Mr. Anderson admittedly did not object to Mr. Jones's alleged conduct, and Mr. Anderson just returned to work because Mr. Jones "can do whatever he wants." (*Id.* at 106-08) The same evidentiary shortcomings apply to Mr. Anderson's alleged "peek-a-boo" incident. Assuming the incident occurred, it did not threaten, humiliate or even upset Mr. Anderson. (*Id.* at 84-85)

Similarly, as to Mr. Grant, Mr. Anderson testified that he was not upset when Mr. Grant allegedly talked about the possibility of Mr. Anderson visiting his home and sitting on his bed. (Anderson Dep. at 142, 146) The alleged "thigh" incident did not bother Mr. Anderson either. (*Id.* at 150) He admittedly did not attempt to remove Mr. Grant's hand from his thigh because, "I'm comfortable with myself." (*Id.* at 150-51) He did not even tell Mr. Grant not to do it again. (*Id.* at 151-52)

Fourth, none of the four alleged incidents interfered with Mr. Anderson's ability to perform his job. After each alleged incident, Mr. Anderson simply returned to his assigned work at DPW. (Anderson Dep. at 87, 127, 146, 152) *See Patane*, 508 F.3d at 113 (courts should consider whether the alleged conduct "unreasonably interferes with an employee's work performance").

Fifth, Mr. Anderson testified that he does not allege that Ms. Candelario specifically told either Mr. Jones or Mr. Grant to sexually harass him. (Anderson Dep. at 200) Thus, Mr. Anderson's "aider and abettor" harassment claim against Ms. Candelario lacks factual support and cannot stand as a matter of law. *See Anderson*, 850 F. Supp. 2d at 404-05.

Finally, Mr. Anderson has failed to meet his burden under all three statutes of establishing that his harassment allegations, even if true, "created a hostile environment because

of his sex." *See Patane,* 508 F.3d at 113; *Williams,* 61 A.D.3d at 75-80.  Mr. Jones and Mr. Grant each attest that he is not bisexual or gay.  (Jones Decl. at ¶ 3; Grant Decl. at ¶ 3)  In contrast, Mr. Anderson merely speculates that each is bisexual.  (Dep. at 36-37, 44-45, 47-48, 84, 112, 179)  Thus, Mr. Anderson has not produced evidence that demonstrates that the alleged advances by Mr. Jones and Mr. Grant occurred because of his *sex*.  To overcome a motion for summary judgment, Mr. Anderson must do more than offer speculation; his bare conclusory allegations about Mr. Jones and Mr. Grant's sexual orientation are not nearly enough to defeat this motion. *Waters,* 769 F. Supp. 2d at 552; *LaPorte,* 2010 WL 1779342, at *3.

In sum, Mr. Anderson has not come forward with any evidence that supports his same-sex sexual harassment claim.  In this evidentiary vacuum, summary judgment is appropriate because "no reasonable juror could return a verdict for the plaintiff." *See Liberty Lobby,* 477 U.S. at 252.  Accordingly, Mr. Anderson's harassment claim under Title VII, the NYSHRL and the NYCHRL should be dismissed as a matter of law.

## POINT II

### ALTERNATIVELY, MR. ANDERSON'S SAME-SEX SEXUAL HARASSMENT CLAIM SHOULD BE DISMISSED BECAUSE HE HAS ENGAGED IN THE INEXCUSABLE SPOLIATION OF KEY EVIDENCE, WHICH HAS UNFAIRLY PREJUDICED DEFENDANTS.

By Mr. Anderson's own testimony, he secretly tape-recorded Defendants and others to gather evidence to support his harassment claim.  (Anderson Dep. at 183-94)  His destruction of that evidence suggests that the evidence is fatal to his claim.  A fair inference is that the missing tapes would show that Mr. Anderson never complained to Ms. Candelario about sexual harassment because there was no sexual harassment.

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999). Mr. Anderson has engaged in spoliation.

Although first denying that he had any tape-recordings, Mr. Anderson then admitted that he secretly tape-recorded conversations with Ms. Candelario, Mr. Grant and others at DPW. (Anderson Dep. at 183-84, 186, 193-94) He testified that he secretly tape-recorded his alleged oral complaint to Ms. Candelario concerning sexual harassment, which was the only time that he alleges that he complained about sexual harassment. (*Id.* at 132-35, 187-89) Mr. Anderson further testified, however, that he might have "misplaced" all the tape-recordings in the "garbage." (*Id.* at 184-85, 189-91)

On September 27, 2012, this Court ordered Mr. Anderson to provide the tape-recordings to Defendants by October 11, 2012 (Asen Decl. at Ex. I), but he has not done so. Instead, he wrote to Defendants' counsel that he could not locate the tape-recordings in his home, nor could he obtain the copies that he allegedly sent to the New York Times, the Daily News, the New York Post and to certain media figures. (Asen Decl. at Ex. J)

A. **Mr. Anderson's Spoliation Unfairly Prejudices Defendants.**

The missing tapes are directly relevant to Mr. Anderson's remaining same-sex harassment claim. If his tape-recording of his conversation with Ms. Candelario does not substantiate his allegation that he complained to her about the alleged harassment, that would, of course, fatally undercut his claim against Ms. Candelario and DPW. It would also have a direct bearing on his harassment claim against Messrs. Jones and Grant because Mr. Anderson's failure to complain to Ms. Candelario about the alleged harassment would be strong evidence that the

alleged harassment never took place. Accordingly, Mr. Anderson's failure to preserve and produce the missing tapes has irretrievably prejudiced Defendants' ability to defend against his harassment claim.

The inference is irresistible that Mr. Anderson's extensive tape-recordings produced no evidence of harassment. Mr. Anderson knew that the tape-recording of his conversation with Candelario was important. He admittedly listened to the tape-recording several times, and had to know whether it showed that he complained to Candelario about sexual harassment. (Anderson Dep. at 189, 191) He believed his surreptitious tape-recordings of Defendants were so important that he sent copies to three newspapers and several media figures. (*See* Asen Decl. at Ex. J) Yet, he allegedly cannot produce the tape-recordings because he may have "misplaced" them in the "garbage" and cannot obtain the copies that he allegedly sent to the media. (Anderson Dep. at 190; Asen Decl. at Ex. H) Thus, Mr. Anderson's failure to produce the missing tapes has prejudiced Defendants' ability to prove through the evidence of the tapes themselves that his same-sex harassment claim is false.

**B.    Mr. Anderson's Spoliation Requires Dismissal of his Remaining Claim.**

Where a party engages in spoliation, the district court has authority under Rule 37 of the Federal Rules of Civil Procedure, as well as the inherent power, to impose sanctions. *West*, 167 F.3d at 779; *Barsoum v. NYC Housing Auth.*, 202 F.R.D. 396, 399 (S.D.N.Y. 2001). In determining whether to impose sanctions and, if so, their severity, a district court should consider whether the sanctions would: "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of

evidence by the opposing party.'" *West,* 167 F.3d at 779 (quoting *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998)).

Although less drastic remedies should be imposed when appropriate, a district court has authority to dismiss a claim (or a lawsuit) upon a showing of "willfulness, bad faith, or fault on the party of the sanctioned party," and where the spoliation prejudices the innocent party. *West,* 167 F.3d at 779; *see Pension Committee of Univ. of Montreal Pension Plan v. Banc of America Securities, LLC,* 685 F. Supp. 2d 456, 469-70 (S.D.N.Y. 2010).

As in *McMunn v. Memorial Sloan-Kettering Cancer Center,* 191 F. Supp. 2d 440, 452-54, 460-62 (S.D.N.Y. 2002) (Buchwald, J.), an outright dismissal is the appropriate sanction here. In *McMunn,* this Court dismissed a former employee's discrimination complaint against the hospital and imposed a $20,000 monetary sanction against her after she tampered with critical evidence that could have harmed her case and committed a fraud on the court. Among other things, the former employee surreptitiously tape-recorded conversations with several other hospital employees, produced six such tape-recordings during discovery, but an expert on audio tape-recordings concluded that they had been edited. *Id.* at 452-54. Here, rather than edit his tape-recordings, Mr. Anderson withheld this critical evidence from Defendants by throwing the evidence in the garbage. *See also Miller v. Time-Warner Communications, Inc.,* 1999 WL 739528, at *2-3 (S.D.N.Y. Sept. 22, 1999) (complaint dismissed where, *inter alia,* the former employee deliberately erased a harmful written notation).[12]

---

[12] In *Barsoum,* the Court sanctioned the plaintiff who had spoliated the tape-recording of a particular meeting, while permitting her to pursue unrelated claims of discrimination. 202 F.R.D. at 401. In the present case, no such separation of issues is possible. As shown in Point II.A above, the tape-recordings spoliated by Mr. Anderson have a direct bearing on his entire remaining claim, and their spoliation has therefore prejudiced Defendants' ability to defend against the claim.

Accordingly, Mr. Anderson's same-sex sexual harassment claim should be dismissed on the alternative ground that he has engaged in the spoliation of key evidence, which has unfairly prejudiced Defendants. The Court should also impose any other sanctions on Mr. Anderson that it deems appropriate, including a monetary sanction of $10,000. This monetary sanction would represent a small portion of the costs and fees incurred by DPW in this action. While it would not compensate DPW for the substantial costs and fees that DPW has incurred, it would punish Mr. Anderson for his destruction of evidence and his failure to heed this Court's prior warning. *See Anderson*, 850 F. Supp. 2d at 418 ("These observations and rulings have now put plaintiff squarely on notice, and the Court trusts that he will conduct himself properly in this case going forward."); *see also McMunn*, 191 F. Supp. 2d at 462 (dismissing claim and imposing $20,000 sanction to compensate defendant "for at least part of the costs" it incurred due to the plaintiff's misconduct).

## CONCLUSION

For all the foregoing reasons, Defendants respectfully submit that the complaint should be dismissed in its entirety with prejudice, that summary judgment should be granted in their favor as a matter of law, and that appropriate sanctions be imposed on Mr. Anderson, together with costs, disbursements and reasonable attorneys' fees.

Dated: December 18, 2012

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By: _____

Barry Asen
Lauren Malanga
Anna Kolontyrsky

250 Park Avenue
New York, New York 10177-1211
(212) 351-4500
Attorneys for Defendants
Davis Polk & Wardwell LLP,
Lawrence Jacobs, Jennifer Candelario,
Lamina Vucetovic, Robert Jones,
Duane Grant and Emmanuel Fashakin